PEOPLE *ex rel.* OAK HILL CEMETERY ASS'N *v.* PRATT *et al.*, Assessors.

(*Supreme Court, General Term, Fifth Department. June 2, 1891.*)

1. CEMETERIES—RIGHT TO ACQUIRE LAND—CONSENT OF COUNTY SUPERVISORS.
    Laws N. Y. 1852, c. 280, § 3, as amended by Laws 1889, c. 389, which provides that it shall not be lawful for a rural cemetery to acquire land for cemetery purposes in either of the counties of Westchester, Kings, Queens, or Rockland, without first obtaining the consent of the board of supervisors of such county, applies only to the counties named in such statutes. Disapproving *People* v. *Pratt*, 14 N. Y. Supp. 551.

2. SAME—RURAL CEMETERIES—ACQUIRING LAND IN CITY.
    Laws N. Y. 1847, c. 133, providing for the incorporation of "rural" cemeteries, does not restrict such cemeteries to the holding and use of land outside of city limits. Disapproving *People* v. *Pratt*, 14 N. Y. Supp. 551.

3. CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS—CITY ORDINANCES.
    The city council of Rochester, being empowered by Laws N. Y. 1880, c. 14, § 40, subd. 18, to regulate the burial of the dead within the city, enacted an ordinance authorizing relator, a cemetery association, to use as a cemetery certain land acquired by it for that purpose within the city. Afterwards, and before relator had used or prepared the land for use as a cemetery the land in question, the ordinance was repealed, and such use was forbidden. *Held*, that such ordinance did not impair the obligation of a contract, and was valid. Affirming *People* v. *Pratt*, 14 N. Y. Supp. 551.

Appeal from special term, Monroe county.

Application by the Oak Hill Cemetery Association for a writ of *certiorari* to review an assessment of its property made by Luther A. Pratt and others, as assessors of the city of Rochester. A judgment was entered in pursuance of the decision of the court, after a reference of certain matters, that the lands of the relator were not exempt from taxation, but were liable to assessment for general city taxes for the year 1890, and affirming the report of the referee that the valuation of $75,000, made by the assessors, was greater than the actual value of the land, and unequal, when measured by valuations of other lands, and reducing the same to the sum of $52,000. Relator appeals.

Argued before DWIGHT, P. J., and MACOMBER, J.

*H. F. Remington* and *Martin W. Cooke,* for appellant. *George F. Danforth* and *Henry J. Sullivan,* for respondents.

PER CURIAM. The relator was incorporated on the 16th day of March, 1889, under chapter 133 of the Laws of 1847, entitled "An act authorizing the incorporation of rural cemetery associations." Such was the allegation of the petition, and the same was admitted by the answer filed by the assessors. By section 10 of that act it is provided "that the cemetery lands and property of any association formed pursuant to this act shall be exempt from all public taxes, rates, and assessments." It is under this provision of law that the *certiorari* was issued at the instance of the relator under a claim that the property which it owns, consisting of $45\frac{1}{2}$ acres of land, situate in the Sixteenth ward of the city of Rochester, is exempt from taxation. The learned justice at special term seems to have been of the opinion that the acquisition and proposed use by the relator of its lands for cemetery purposes was not legal, because there had not been obtained for such purpose the consent of the board of supervisors of Monroe county, under chapter 280, § 3, of the Laws of 1852. We cannot assent to that view of the case. The act of 1852, in respect to the necessity of obtaining the consents of boards of supervisors, applied to the counties of Westchester, Kings, and Queens, named in the statute, and to no other counties in the state. This act was amended by chapter 389 of the Laws of 1889, by including the county of Rockland among those where the consent of the board of supervisors must be obtained as a condition precedent to the holding and use of lands for cemetery purposes. We feel constrained to hold, under the facts alleged in the petition and admitted in the answer, that for the purposes of this proceeding the plaintiff was a duly-organized corporation under the act of 1847, unaffected by the above-named provisions of the act of 1852, and that it lawfully proposed to set apart its lands for cemetery purposes. Nor do we think that the word "rural," that appears in the title and body of these and many other acts of the legislature, has any significance or bearing upon the merits of the case. That word, it is true, commonly means the country, as separated from the city; but in the instances named it was not intended by the word to limit the holding and use of cemetery grants to lands outside of city limits. The word was manifestly used as descriptive of the picturesque character of the place of burial, rather than as something beyond city boundaries; for there may be, and often is, *rus in urbe.*

But there is another ground stated by the learned justice upon which the judgment appealed from may be affirmed, and that is that the lands of the relator, whatever may have been the intention of the parties in acquiring title thereto, could not be held or used for cemetery purposes without the consent of the common council of the city of Rochester. By chapter 14 of the Laws of 1880, § 40, subd. 18, there is given to the common council of that city power to make, modify, and repeal such ordinances and regulations as it may deem desirable, within the city, and, among other matters, it may regulate the burial of the dead. It cannot be denied that the common council had

power, if it had seen fit to exercise it, to permit the burial of the dead in the relator's lands; but such consent has not been shown in this case. It is true that three days after the incorporation of the relator the common council passed an ordinance amending a previous ordinance, which forbade the burial of the dead in Rochester, except in certain cemeteries named in the ordinance, so as to include in such exceptions the land in question. In pursuance of that ordinance the assessors left this property of the relator off from the assessment rolls of 1889, under section 10 of the act of 1847, above referred to. But before any steps were taken to turn these lands actually into a cemetery, or to prepare them for cemetery purposes, this amendment of the ordinance was revoked; and by an ordinance enacted on the 2d day of May, 1889, the original ordinance, not including the relator's lands in its exceptions, was substantially re-enacted, and from that time no right remained in the relator to use these lands for cemetery purposes. The action of the common council did not in and by the amendment of the old ordinance amount to a contract such as would enable the court to say that it had not the power afterwards to recede from its action. Hence the ordinance of 19th day of March, 1889, by which the relator's lands were permitted to be used for cemetery purposes, went for naught. No question, in our judgment, of the impairment of a contract arises in this matter. *People* v. *Roper,* 35 N. Y. 629; *People* v. *Board of Assessors,* 84 N. Y. 610. For this reason we think that the action of the assessors in listing the relator's property and assessing the same was legal, and that consequently the appeal of the relator from the judgment must be deemed to be unavailing. In respect to the appeal taken by the defendants from that portion of the judgment which reduced the valuation of the relator's lands from $75,000 to $52,000 it may be sufficient to say that, while the evidence was very inconclusive, resting largely upon the opinions of the witnesses, we cannot say that the finding of the learned referee in that regard, which has had the approval of the special term, was not well supported by testimony, and consequently we also affirm that part of the judgment appealed from. The judgment should be affirmed, without costs of this appeal to either party.