HORNBECK ET AL., RESPONDENTS, *v.* RICHARDS, ADMINISTRATRIX, APPELLANT.

(No. 6,132.)

(Submitted June 6, 1927. Decided July 6, 1927.)

[257 Pac. 1025.]

*Personal Injuries—Automobiles—Reckless Driving—Evidence —Insufficiency—Duty of Driver to Guest—Executors and Administrators — Estate of Deceased Tort-feasor Insolvent — Right of Appeal — Statutes of Nonclaim — When Inapplicable.*

Personal Injuries—Right of Appeal—Administratrix and Heir of Tortfeasor's Estate Entitled to Appeal, Though Estate Insolvent.
1. Under the rule that a party to an action whose rights are prejudiced by a judgment may appeal therefrom as a party ag-

---

1. See 2 R. C. L. 49.

grieved, *held,* that an administratrix, who was also an heir at law of her intestate, could properly appeal from a judgment for damages in a large amount recovered against her in her representative capacity for death occasioned by alleged negligence of the decedent in his lifetime, even though the estate be insolvent.

Same—Executors and Administrators—Statutes of Nonclaim not Applicable to Claims Arising from Tort of Decedent.

2. *Held,* that the statutes of nonclaim which bar claims against an estate or its executor or administrator unless first presented for allowance, and, if rejected, suit brought within three months after rejection, cover only such claims as came into existence by contract, express or implied, prior to the death of the decedent, and therefore do not apply to claims for unliquidated damages arising from a tort committed by the decedent in his lifetime.

Same—Automobiles—Reckless Driving—Insufficiency of Evidence.

3. In an action against an administratrix for damages for death occasioned by the negligence of her intestate in driving an automobile in which plaintiff's husband was riding as a guest of decedent, evidence as to alleged negligence in driving at an excessive speed and failing to keep a proper lookout, *held* insufficient to go to the jury and that therefore the court erred in denying defendant's motion for a directed verdict.

Same—Automobiles—Duty of Driver to Guest.

4. The driver of an automobile is not liable as an insurer or common carrier to an invited guest riding with him, his duty to the latter being no greater than to exercise reasonable and ordinary care in the operation of the machine so as not unreasonably to expose his guest to danger by increasing the hazard incident to that mode of travel; he must exercise that degree of care and diligence which a man of reasonable prudence would exercise for his own protection and that of his family and property under like conditions.

---

[1] Appeal and Error, 3 **C. J.,** sec. 492, p. 631, n. 12; sec. 493, p. 634, n. 18; sec. 507, p. 644, n. 73, p. 645, n. 80.

[2] Executors and Administrators, 24 **C. J.,** sec. 950, p. 330, n. 47; sec. 1933, p. 780, n. 55.

[3] Motor Vehicles, 28 **Cyc.,** p. 47, n. 20.

[4] Motor Vehicles, 28 **Cyc.,** p. 41, n. 46 **New.**

*Appeal from District Court, Silver Bow County; George Bourquin, Judge.*

ACTION by Josephine Hornbeck and another against Maibelle B. Richards, as administratrix of the estate of Warrington Richards, deceased. Judgment for plaintiffs and defendant appeals. Reversed and remanded, with direction to dismiss the complaint.

---

2. See 11 **R. C. L.** 193.

4. Liability of owner or operator of automobile for injury to guest, see notes in 20 **A. L. R.** 1014; 26 **A. L. R.** 1425; 40 **A. L. R.** 1338.

*Messrs. Frank & Gaines,* for Appellant, submitted a brief; *Mr. R. F. Gaines* argued the cause orally.

*Mr. Timothy F. Nolan, Mr. J. F. Sullivan* and *Mr. Harlow Pease,* for Respondents, submitted a brief; *Mr. Pease* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted by the plaintiffs to recover $20,000 damages alleged to have been sustained by them by reason of negligence on the part of defendant's intestate, in driving an automobile resulting in the death of Samuel Hornbeck. The complaint was filed on March 18, 1926, and alleges that the plaintiffs are, respectively, the wife and son of Samuel Hornbeck, deceased, and his only heirs, the wife being the mother of Samuel Hornbeck, Jr., and his guardian ad litem. Upon issue joined by answer and reply, the cause was tried to a jury and resulted in a verdict for the plaintiffs in the sum of $1,750. Judgment was regularly entered upon the verdict, and the appeal is from the judgment.

Defendant has made but one assignment of error; viz., that the court erred in denying the defendant's motion for a directed verdict.

1. At the outset we are confronted by a motion interposed [1] by the plaintiffs to dismiss the appeal upon the grounds that (a) the defendant is not aggrieved by the judgment; (b) the estate of defendant's intestate is wholly insolvent, in consequence whereof the questions presented are moot; and (c) the defendant is estopped to take this appeal by reason of the files and records in the matter of the administration of the estate of the intestate.

The statute gives the aggrieved party a right of appeal (sec. 9730, Rev. Codes 1921) from a final judgment (Id., sec. 9731), and from an examination of the record in this case we are of opinion that the defendant is wholly within her

rights, even though the estate of Richards, yet unsettled, may appear from the records of the probate side of the court to be insolvent. In her representative capacity she is the defendant in the action, and judgment has been entered against her in such relationship, the amount of which she is ordered to pay "in the due course of administration of said estate." Such judgment against the administratrix establishes a claim against the estate to be paid in due course of administration (*In re Smith's Estate*, 60 Mont. 276, 199 Pac. 696), and, since it must be paid from assets available, will greatly diminish, if not entirely destroy, the value of the estate. Whether the estate is insolvent is of no concern respecting the merits of this action. The records of the probate court are not properly before us, and have no bearing on the merits of this appeal. The administratrix is an heir at law of the intestate, and not only are her personal rights as such affected by the judgment, but in her representative capacity her duty is to conserve the assets of the estate for the benefit of creditors and others interested. Surely, it cannot reasonably be urged that she is not a party aggrieved by the judgment. Under the statute respecting the right of appeal, we are of opinion that the proper general rule to be applied is that any party to an action or proceeding having an interest recognized by law in the subject matter, which interest is injuriously affected by the judgment, is a party aggrieved within its meaning (2 Cal. Jur. 216),—in short, a party to the action whose rights are prejudiced by the judgment. (*People* v. *Pfeiffer*, 59 Cal. 89.)

2. In her answer, the defendant pleads the statute of nonclaim in bar of the action, alleging: "That subsequent to her appointment as administratrix, in conformity with an order of said court duly given and made under date of February 17, 1925, directing the giving of notice to creditors of any persons holding claims against said Warrington Richards, deceased, to present them to her as such administratrix, she did

cause to be published once a week for four successive weeks in the "Montana American," a newspaper of designated publication, such notice to creditors and persons having claims against said estate; and thereafter under date of March 25, 1925, an order of said court was duly given and made to the effect that due and legal notice had been given to creditors of and persons having claims against said Warrington Richards, deceased. That the notice published as aforesaid required the presentation of claims within ten months from the date of its first publication. That thereafter and on or about October 14, 1925, there was presented to defendant, as administratrix of the estate of Warrington Richards, deceased, a claim by and on behalf of plaintiffs herein founded upon the death of Samuel Hornbeck while riding as a guest of Warrington Richards in his Pierce-Arrow automobile on January 23, 1925, and being a claim arising out of the same facts and circumstances as are made the basis of plaintiffs' complaint herein: That after the presentation of said claim as aforesaid, and under date of October 15, 1925, this defendant, by writing indorsed upon said claim, rejected the same and thereafter and under date of October 19, 1925, filed said claim so presented, together with her indorsement of rejection thereon, in the office of the clerk of the district court in the matter of the estate of Warrington Richards, deceased. That no suit or action upon or to enforce said claim or to enforce the alleged liability of Warrington Richards and his estate growing out of the facts set forth in said claim was commenced either against this administratrix or any other representative of the estate of Warrington Richards, deceased, at any time or at all prior to March 18, 1926. And defendant alleges that by and because of the facts aforesaid the cause of action, if any, of plaintiffs herein is barred, and particularly that said claimed cause of action is barred by the provisions of section 10178, Revised Codes of Montana 1921, as amended by Chapter 11 of the Nineteenth Session Laws of the Montana Legislative Assembly 1925,

at page 12·thereof." And the plaintiffs at the trial admitted the facts to be as alleged in defendant's answer, other than that the plaintiffs' cause of action was barred.

The sections of our Revised Codes of 1921, proper to be considered in determining this question, are in part as follows:

Section 10170. "Every executor or administrator must, immediately after his appointment, cause to be published * * * notice to the creditors of the decedent, requiring all persons having *claims* against him to exhibit them, with the necessary vouchers, to the executor or administrator [etc.]."

Section 10173 provides that: "All claims *arising upon contracts,* whether the same be due, not due, or contingent, must be presented within the time limited in the notice, and any claim not so presented is barred forever."

Section 10174 provides that: "Every claim *which is due,* when presented to the executor or administrator, must be supported by the affidavit of the claimant, or some one in his behalf, that the amount is justly due, that no payments have been made thereon which are not credited, and that there are no offsets to the same, to the knowledge of the affiant. If the claim be not due when presented, or be contingent, the particulars of such claim must be stated [etc.]."

Section 10178, as amended by Chapter 11 of the Laws of 1925, page 12, reads: "When a claim is rejected either by the executor or administrator, or the judge, the holder must bring suit in the proper court against the executor or administrator within three months after the date such claim is filed, with indorsement thereon showing the rejection thereof, in whole or in part, in the office of the clerk of court in which the proceedings are pending, if it be then due, or within two months after it becomes due, otherwise the claim shall be forever barred."

Section 10179 provides: "No claim must be allowed by the executor or administrator, or by the judge, which is barred by the statute of limitations. When a claim is presented to

a judge for his allowance, he may, in his discretion, examine the claimant and others on oath, and hear any legal evidence touching the validity of the claim.''

Section 10180 provides: ''No holder of any claim against an estate shall maintain any action thereon, unless the claim is first presented to the executor or administrator, except in the following case: An action may be brought by any holder of a mortgage or lien to enforce the same against the property of the estate subject thereto where all recourse against other property of the estate is expressly waived in the complaint.''

These statutes recognize three classes of claims which must **[2]** be presented to the executor or administrator (1) claims due; (2) claims not due; and (3) contingent claims. But all classes must arise on contract. While a claim against an estate predicated on contract with the deceased must be presented to the executor or administrator as a condition precedent to suit (sec. 10180, Rev. Codes 1921; *Ellissen* v. *Halleck,* 6 Cal. 393; *Morrow* v. *Barker,* 119 Cal. 65, 51 Pac. 12; *Humbolt Society* v. *Burnham,* 111 Cal. 345, 43 Pac. 971; *Morse* v. *Steele,* 149 Cal. 303, 86 Pac. 693; *Smith* v. *Smith* (C. C. A.), 224 Fed. 1), it is not necessary to so present a claim for damages, because of wrongful acts of the decedent in his lifetime, as a condition precedent to the institution of an action to recover same (*Hardin* v. *Sin Claire,* 115 Cal. 460, 47. Pac. 363; *Leverone* v. *Weakley,* 155 Cal. 395, 101 Pac. 304). Such statutes are special in character; they are intended to expedite the administration of the estates of deceased persons. They constitute a specific statute of limitations applicable to estates, and compliance with their provisions is essential as to every right of action arising on contract. (*Vanderpool* v. *Vanderpool,* 48 Mont. 448, 138 Pac. 772.) Claims required to be presented to the executor or administrator in order to enable a claimant to recover against an estate are such as have come into existence by contract, express or implied. (*Lamme* v. *Dodson,* 4 Mont. 560, 2 Pac. 298.) The language em-

ployed is plain and unambiguous and comprehends only a contractual indebtedness existing against the estate by reason of the obligation having been incurred by the decedent in his lifetime, and these statutes apply only to debts existing at the time of the death of the intestate. (*Nathan* v. *Freeman,* 70 Mont. 259, 41 A. L. R. 138, 225 Pac. 1015.)

It is perfectly clear to us from the language employed throughout that it was never the intention of the lawmakers that the statute should be applied to unliquidated claims arising in consequence of torts alleged to have been committed by the decedent in his lifetime. As to the latter class of claims, there is nothing fixed or definite upon which the executor or administrator could act; and, necessarily, any such claim must first be reduced to judgment establishing their validity and the amount to be paid from the assets of the estate. Claimants against an estate for unliquidated damages arising from a tort committed by the decedent in his lifetime do not, in our opinion, come within the provisions of the statute. Consequently, in this case, the plaintiffs' right of action against the estate was not barred by reason of their having failed to institute suit within three months after the claim filed with the defendant as administratrix had been by her rejected. No requirement existed for the filing of such a claim with the administratrix at all, and the mere fact that it was filed is of no consequence.

3. This brings us to a consideration of the main question in [3] the case, namely, as to whether there was any evidence before the jury to support the verdict; or, otherwise stated, did the court err in refusing to direct a verdict in favor of the defendant?

The acts of negligence on the part of the intestate upon which the plaintiffs predicate right to recover damages are, that the deceased, Richards, at the time of the accident, failed to exercise ordinary care in driving the automobile, and to

watch the course taken by the automobile "so as to keep the same upon the safe and traveled portion" of the highway "and avoid any soft, rough, or dangerous ground." It is alleged: "All of said duties the said Richards violated in that he drove said automobile at a rate of speed equaling or exceeding forty-five miles per hour, which was a speed at which it was impossible for the said Richards to keep the same safely under control; and, further, in that the said Richards negligently looked away from the course being taken by said automobile and ceased to keep a proper or any lookout. By reason of all of said facts, said automobile was driven by said Richards from the safe and traveled course of said road and caused to skid and overturn, resulting in the said Hornbeck being thrown, crushed, and killed."

The evidence is not extensive, and therefrom, in light most favorable to the plaintiffs, it appears that on the afternoon of January 23, 1925, Warrington Richards, of the city of Butte, left that city driving his automobile, accompanied by Samuel Hornbeck, Maurice Lynch and Raymond Hanratty, who were invited guests of Richards. During the course of the drive the automobile overturned, Richards and Samuel Hornbeck were killed, and the other two occupants of the car injured. Richards was engaged in the undertaking business in the city of Butte, and on the morning of the day in question Lynch and Hanratty had used one of Richards' automobiles in attending a funeral. Lynch was engaged in the conduct of a taxicab or automobile public service in Butte, and Hanratty was employed by him as a driver. Samuel Hornbeck was independently engaged in the same business, and all were experienced automobile drivers. About noon Lynch, Hanratty and Richards had lunch at the Mudro Grill, consuming about two hours' time, and after extended social conference they determined to go for a ride in Richards' Pierce-Arrow automobile, as Lynch and Hanratty were going to use such car in the rent service, and it was intended that it should be

driven the following day by Hanratty to a funeral. It was Lynch's desire to have Hanratty go on the trip proposed in order "to get acquainted with the car and see what it was like." Richards expressed a desire to have his friend, Samuel Hornbeck, accompany them, so they proceeded to the Acoma Hotel where the latter was known to keep his taxicab stand. There they got Mr. Hornbeck and then proceeded west along the Anaconda highway. Richards was at the wheel driving the automobile, Hornbeck was seated in the front seat to the right of the driver, and Lynch and Hanratty occupied the rear seat. Such positions were at all times maintained by them until the time of the accident. They first stopped at Rocker and remained there at the "Blue Bird" pool-hall, visiting friends for possibly as much as twenty minutes. From there they proceeded on about a mile and a half west to Nissler, where they stopped to get some cigars. "Up to Nissler the highway is paved with concrete, and the pavement extends about 4 miles west of Nissler." Upon leaving the latter place, they continued westward along the highway, left the pavement, and continued on a dirt road connecting therewith. "The dirt road is a fairly good road, but there is always a lot of sand on it; the sand is on both sides of the road and to the center of the road it is more traveled and a little more solid. The center and traveled portion is hard and the sand wears off to the side. There was sand to the right-hand side of the traveled portion of the road. The road is wide enough to accommodate two cars." The road was pretty fair, but it was mostly traveled in the center. The traveled portion of the road was in good condition, the sand and gravel being off to the sides thereof. "The road was possibly fifteen or twenty feet wide, slightly crowned or raised in the center to permit of free drainage. A man could easily stay on one side or the other of the crown without having to hold his machine on the road. One could drive along there without any effort." After traveling along the dirt road about three miles the accident

[80 Mont. 27.]

occurred, described by plaintiffs' witness Hanratty as follows: "At the time of the accident I said certain things happened; one was that I noticed Richards turn apparently to say something to Hornbeck; another was Lynch calling out some sort of warning; and another was that the car appeared to get out of control, and finally turned over. As to how quickly these things happened one after the other, I couldn't tell exactly how long it took; it all happened or seemed to happen like that— the snap of your fingers; everything seemed to happen all at once. As I express it with my fingers, just the snap of your fingers. Up to that time I had been observing Mr. Richards' method of driving the machine, I was a driver of experience and so was Lynch and so was Hornbeck, and we had all driven that road many times. And the first complaint that anybody made on this trip was the one I have just told about, and that is the only one that I can recall. At the time Richards spoke to Hornbeck it is my impression and best recollection that he had both hands on the wheel all the time. * * * While we had passed some cars before the accident, we were not turning out to pass any car at the time of the accident. We had passed the Butte-Anaconda stage possibly three-quarters of a mile when the accident happened—going in the opposite direction." At the time of the accident the automobile was being driven at a rate of speed approximating forty miles per hour, but no objection was raised by anyone as to the speed nor the manner of driving the automobile until the instant of the accident. Lynch as a witness for plaintiffs testified: "When Richards turned to speak to Hornbeck I noticed the car was running off the road to the right-hand side into the soft sand. Observing this I said, 'For Christ's sake you are off the road.' I was in a half sitting or half standing position. Was reaching for the jump seat with my two hands stretched out. I was in that position when I hollered. The car started over into the sand right at the same time Richards turned to speak to Hornbeck. After

that I could see Richards try to bring the car back on the road. The next thing I remember I tried to pick myself up.''

Upon the facts in the case before us, it is manifest that the [4] intestate was not required to exercise that high degree of care towards his guests, in the automobile by him driven, which would have been exacted of him under the law had he been engaged for hire. However, he was required to exercise a higher degree of care for their safety than had they been mere trespassers. The decisions of the courts are not in harmony as to the character of negligence on the driver's part which will render him liable, some holding to the rule of gross negligence, others to the rule of ordinary negligence, and still others to the rule of slight negligence. However, the law is firmly established by a long line of decisions that the driver of an automobile is not liable as an insurer or common carrier to invited guests riding in the machine. We are of the opinion that the express or implied duty of the driver of an automobile to one who rides with him as an invited guest is to exercise reasonable and ordinary care in its operation so as not unreasonably to expose such guest to danger by increasing the hazard incident to that method of travel. The driver must exercise that degree of care and diligence which a man of reasonable prudence would exercise for his own protection and the protection of his family and property under like conditions. Nothing more can be expected or exacted. (*Liston* v. *Reynolds*, 69 Mont. 480, 223 Pac. 507.) This rule is deduced from the best reasoned authorities, and meets with our approval. (See *Paiewonsky* v. *Joffe* (N. J. Err. & App.), 129 Atl. 142, 40 A. L. R. 1335, and annotation, page 1338; Huddy on Automobiles (1927) sec. 802.)

''What is meant by reasonable or ordinary care must be determined from the facts presented in each case. 'But this term is relative; and ordinary and reasonable care—which is, after all, the most that the law requires—means, when used in this connection, that degree of care which prudent men,

skilled in the particular business, would be likely to exercise under the circumstances. The care must be proportionate to the danger. What is ordinary care in a case of extraordinary danger would be extraordinary care in a case of ordinary danger, and what would be ordinary care in a case of little danger would be much below this in case of great danger. (Thompson on Negligence, 152, and cases cited.' *Diamond* v. *Northern Pac. R. Co.,* 6 Mont. 580, 13 .Pac. 367.)'' (*Liston* v. *Reynolds,* supra.

Applying such rule, the proof falls far short of establishing the charges of negligence upon which the action was predicated; namely, (1) excessive speed, and (2) failure to keep a proper lookout. There was no question of fact to be submitted to the jury. The court should have granted defendant's motion for a directed verdict, thus determining as a matter of law from the evidence, viewed in a light most favorable to the plaintiffs, that they are not entitled to recover any damages whatsoever.

The judgment is reversed and the cause remanded to the district court of Silver Bow county, with directions to dismiss the complaint.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and MATTHEWS concur.