STATE OF MISSOURI at the Relation of CONSUMERS PUBLIC SERVICE COMPANY, MISSOURI POWER & LIGHT COMPANY and MISSOURI PUBLIC SERVICE CORPORATION, Appellants, v. PUBLIC SERVICE COMMISSION OF THE STATE OF MISSOURI and FREDERICK STUECK, JOHN A. FERGUSON, CHARLES L. HENSON, PAUL VAN OSDOL and KYLE D. WILLIAMS, Members of THE PUBLIC SERVICE COMMISSION OF THE STATE OF MISSOURI, IOWA UTILITIES COMPANY, a Corporation, and GRUNDY ELECTRIC COOPERATIVE, INC., a Corporation.—No. 38680.—180 S. W. (2d) 40.

Court en Banc, April 3, 1944.

Rehearing Denied, May 2, 1944.

906

*Paul D. Kitt, A. Z. Patterson* and *Patterson, Chastain & Smith* for appellants.

*John P. Randolph* and *Lester G. Seacat* for Public Service Commission of Missouri, and *Russell N. Pickett* for Grundy Electric Cooperative, Inc., respondents.

*R. K. McPherson* for Empire District Electric Company, *R. B. Oliver, Jr.*, for Missouri Utilities Company, *Roscoe P. Conkling* for St. Joseph Railway, Light, Heat & Power Company, *Ludwick Graves* and *Jacob Brown* for Kansas City Power & Light Company, *amici curiae.*

HYDE, J.—This is an appeal from a judgment of the Circuit Court of Cole County (on review proceedings) affirming an order of the Public Service Commission. The order authorized the sale of electrical properties by the Iowa Utilities Company to the Grundy Electric Cooperative. Appellants are electric public utility companies permitted by the Commission to intervene. Our jurisdiction is based on constitutional questions raised.

The following facts are mainly taken (without quotations and with some additions of our own) from the report of the Commission.

A joint application was made by the Iowa Utilities Company, (hereinafter referred to as Seller), to sell and by the Grundy Electric Corporation, Inc. (hereinafter referred to as Cooperative), to purchase that part of the electric system of the Seller located in Missouri and used in furnishing electric service to the unincorporated community known as Lineville and the incorporated town of Mercer, and rural customers served by an electric line extending from Lineville to Mercer. All the properties involved in this case are located in Mercer County, Missouri.

An intervening petition was filed by Missouri Public Service Corporation, Missouri Power and Light Company and Consumers Public Service Company, objecting to the approval of the proposed sale and alleging in substance that they are public utilities now serving areas adjacent to the towns in Missouri served by the Seller and that they have an ample generating plant and facilities for supplying electric service to such territory; that the acquisition of the Seller's properties by the Purchaser would amount to unwarranted invasion of the territory served by Intervenors and would also frustrate Intervenors' plans in the area, thus resulting in injury to the electric service rendered to the public. Further objection was made on the ground that the Cooperative, if the sale were consummated, would be required to either operate the Seller's properties as a small isolated unit or to rebuild costly transmission lines.

The Seller is the owner of an electric generating plant located in the town of Lineville, Iowa, and owns and operates electric transmission and distribution properties in the towns of Lineville and Clio, Iowa, and intermediate points, as well as the electric transmission and distribution properties, involved herein in Missouri. It proposes to sell all the Iowa and Missouri property to the Cooperative for $37,750.00. None of the villages or towns now served by the Seller have a population of more than 1500.

The Cooperative, whose principal office and place of business is located in Trenton, Missouri, was originally incorporated under the provisions of Article 28, Chapter 102, (R. S. 1939) Mo. Stat. Ann., but it has, since the execution of the sale contract with the Seller, elected to convert its corporate existence, under the Electric Cooperative Act, into a cooperative, non-profit membership corporation under the provisions of Section 5402, Article 7, Chapter 33 (R. S. 1939) Mo. Stat. Ann. (This conversion has been completed.) It is engaged in the distribution and sale of electric energy to its members located in the counties of Grundy, Harrison, Mercer, Sullivan, Linn and Daviess. It owns a rural electrification distribution system of about 430 miles serving 826 members. It is also licensed to do business in the State of Iowa.

All the outstanding common stock of the Seller is owned by the Utilities Holding Corporation. There are no outstanding preferred

stocks, bonds or mortgages against said property. The property proposed to be sold is old, obsolete and in need of repairs and betterments to render adequate service to its customers, and revenues have not been sufficient to make them.

The Cooperative made application for a loan from the Rural Electrification Administration, with which to acquire and improve the system of the Seller and integrate that system with the system now owned and operated by it. A loan in the amount of $118,000.00 was approved. An officer of the Cooperative stated that necessary improvements would be made to the property acquired in order that better and more adequate service may be rendered to the present consumers. The Cooperative proposes to make further extensions from the purchased lines to reach unserved persons in rural areas; and to integrate the properties, with that now owned and operated by it, when materials are available at the end of the present emergency. It already has a line within seven miles. By acquiring these properties, the Cooperative expected to serve farmers in Wayne County, Iowa, (where no cooperative exists) as well as additional farmers in Mercer County, Missouri.

The rates now charged by the Cooperative to its members are shown to be slightly lower, in most instances, than those now charged by the Seller. Seven businessmen and electric users now receiving service from the Seller stated that all its present customers favor the sale of this property to the Cooperative. Ninety-five per cent of these customers, at the date of the hearing, had made application for membership in the Cooperative and all but two or three petitioned the Commission for the approval of the proposed sale. No one now receiving electric service from the Seller, or any person living in the towns and territories it now serves, entered any protest to the granting of the proposed transfer.

The testimony offered on behalf of Consumers Public Service Company, was to the effect that it is a Missouri electric utility, and as such owns and operates an electrical distribution system adjacent to the towns now served by the Seller. Its transmission line extends from Brookfield where interconnection is made with the Missouri Power & Light Company's large steam plant. The line of the Consumers Company extends from Brookfield north to Ravanna, and within seven and a half miles of Mercer, where the Seller's transmission lines are. The Consumers Company takes the position that it is ready and willing to purchase ▇▇ the Seller's system and to connect it with its existing system, or, if proper priority orders for building the seven and a half miles connecting system line cannot now be obtained, to install an additional unit in the generating plant at Lineville, which unit it now owns and has available; that it is willing to pay $40,000.00 for the Seller's entire system; that it has such a contract made by its president with the Utilities Holding Corporation;

that its acquisition of the system will result in improved and adequate service to the public; and that after connection of the Seller's system to its system the ownership and operation of the Seller's plant at Lineville as a standby or peakload reserve plant will enable it to operate its entire system with greater efficiency and economy, as well as increasing its revenue about $17,000.00.

However, the offer of the Consumers Company to purchase the Seller's property was conditioned upon its ability to completely re-finance itself. There was evidence tending to show that at the present time its financial condition is such that it would be unable to buy the Seller's distribution system without a refinancing program. There was also evidence offered tending to show that the service now rendered by the Consumers Company to its own customers, in certain areas, has not been satisfactory.

The Missouri Power and Light Company showed that it has ample and adequate sources of electric power for the entire area; that it has large capacity transmission lines extending into the area and now supplies the Consumers Company and Missouri Public Service Corporation with substantially all the electric current used by such companies in their systems; that the most advantageous and logical plan for the integration of the electric systems in the area require the connection of the Seller's system with the existing three-company interconnected system and its eventual acquisition by the Cooperative would interfere with the most practical methods of integration of facilities in northwest Missouri.

The Cooperative filed a motion to dismiss the appeal herein on the grounds that appellants had no substantial interest which would entitle them to intervene before the Commission, to file a petition for rehearing or to prosecute review proceedings; that they cannot appeal from the judgment of the circuit court (affirming the Commission's order) because they are not aggrieved within the meaning of Section 1184 (R. S. 1939) Mo. Stat. Ann. (all references hereinafter made are to R. S. 1939 and Mo. Stat. Ann.); and that the question of sale is moot because it has been now finally consummated and the purchased property is now being operated by the Cooperative. It is argued that "general laws relating to appeals" are made applicable to Commission review proceedings by Section 5693 and that these require a party to be "aggrieved" in order to have the right to appeal. Authorities are cited, holding that this requires a substantial interest to be directly affected; and that this "must be a direct and immediate pecuniary interest in the particular cause". [American Petroleum Exchange v. Public Service Commission (Mo. App.), 176 S. W. (2d) 533; State ex rel. McKittrick v. Public Service Commission, 352 Mo. 29, 175 S. W. (2d) 857; State ex rel. Fischer v. Vories, 333 Mo. 197, 62 S. W. (2d) 457 and cases therein cited.]

In the Attorney General's case (352 Mo. 29, 175 S. W. (2d) 857) we pointed out that the Commission is furnished with its own counsel appointed by the Governor to generally represent the state in its operations and to enforce its orders in the name of the state; that in addition constituent members of the public in the locality or situation are entitled to partisan representation by a city or other local governmental or private organization (Chamber of Commerce, etc.); and that, while the Attorney General could properly intervene when the state had some concrete interest in the particular case, affecting its pecuniary interest, ''or one definitely affecting the general welfare of the state or its obligations and functioning'', he should not be permitted to always do so because of ''interests that actually are private or local'' merely because every case before the Commission involves the public interest to some extent. In short, the Legislature in establishing the office of counsel for the Commission has provided other representation for that general public interest. We, therefore, held that the Attorney General was not interested *or* aggrieved in such a case. However, we did not hold that an ''interested'' party could not also be ''aggrieved.''

We think ''interested'' is the key provision under the Public Service Commission Act and that it is a broader term than ''aggrieved'', and this is well illustrated by the American Petroleum Company case. The Petroleum Company was held not ''aggrieved'', and its appeal was dismissed, because the *order* did not act directly upon its rights. However, the ultimate enforcement of that order would have acted directly upon its rights, because the order required cancellation of its lease and the removal of its property from the premises it occupied under its lease. Although not immediately ''aggrieved'' by the order, it certainly was very much ''interested'' in it and would be ''aggrieved'' in any sense of the term by what must result from its enforcement. When an order against such an interested party is affirmed in the Circuit Court it would seem that he is ''aggrieved.'' It was said in Hornbeck v. Richards, 80 Mont. 27, 257 Pac. 1025, 1026, where the code statute gave an ''aggrieved party'' the right to appeal: ''Under the statute respecting the right of appeal, we are of the opinion that the proper general rule to be applied is that any party to an action or proceeding having an interest *recognized by law* in the subject matter, which interest is injuriously affected by the judgment, is a party aggrieved within its meaning.'' So, also it was held in People ex rel. N..Y. Ed. Co. v. Willcox, 207 N. Y. 86, 100 N. E. 705, 707 (2), 45 L. R. A. (N. S.) 629, that a rival public service corporation is interested in a proceeding by which the Public Service Commission may, without right, authorize a competing company to issue bonds, and may be ''a party aggrieved'' within a Code statute authorizing review by certiorari.

We, therefore, think respondent's contention (and the decision in the American Petroleum Company case) is based upon too narrow

a view of the Public Service Commission Act. In the first place the Commission is not a court and cannot enter a judgment or order that could act directly upon anyone's rights. It is an administrative agency created to supervise, regulate and investigate operations in certain fields in which the public interest is involved. In controversies growing out of these matters, it has authority to make findings of fact upon substantial evidence and to make orders based thereon. If these orders are reasonable and within the power of the Commission, they may be enforced but only by action of the courts in a suit by the Commission for that purpose. [Sec. 5685; Lusk v. Atkinson, 268 Mo. 109, 186 S. W. 703; Atchison, T. & S. F. R. Co. v. Public Service Comm. (Mo. Sup.), 192 S. W. 460; State ex rel. Laundry, Inc., v. Public Service Comm., 327 Mo. 93, 34 S. W. (2d) 37.] Moreover, its orders are made on the basis of what is in the public interest and not to determine private rights in property or otherwise. [State ex rel. Rutledge v. Public Service Comm., 316 Mo 233, 289 S. W. 785.] Since no Commission order acts directly and immediately upon the rights, pecuniary interest or property of a party, it must be apparent that no one could be aggrieved by an order of the Commission in the sense he would be by a court judgment, because it would still take a court action and judgment to enforce any such order. The purpose of the review proceeding under Section 5690 is to determine the validity of such orders. The judgment on review is in the nature of a declaratory judgment. If the order is determined to be valid, it is affirmed (declared valid). If it is not obeyed, the Commission can then bring an action to enforce it. If it is found invalid it can only be set aside (declared invalid); but the case in court is then ended and any further proceedings must be before the Commission. We think this disposes of the contention that only a moot question is herein involved.

What interest must be involved to entitle anyone to become a party before the Commission? The Public Service Commission is intended to have very broad jurisdiction in the field in which it was intended to operate. As to public utilities furnishing electricity, Section 5646, gives it complete power over rates and services. Section 5649, requires its approval of any new construction or location even though authorized by municipal franchise. Section 5651 prevents the sale, lease or mortgage of any part of a franchise, works or system of such a utility without the permission of the Commission. By these two latter sections, it was intended to give the Commission full control over allocation of territory to such utilities, and to authorize either monopoly or regulated competition therein. State ex rel. Union Electric Light & Power Co. v. Public Service Commission, 333 Mo. 426, 62 S. W. (2d) 742; State ex rel. Kansas City Power & Light Co. v. Public Service Commission, 335 Mo. 1248, 76 S. W. (2d) 343. This, of course, must

be ▮▮▮ done on the basis of the public interest and not merely because of the interest of the utility companies involved.

No utility company can even maintain rights under contracts against the supervision of the Commission. [May Dept. Stores Co. v. Union Elec. L. & P. Co., 341 Mo. 299, 107 S. W. (2d) 41.] As pointed out in the May Dept. Stores case, what is involved is the exercise of the police power of the state. Thus hearings before the Public Service Commission are controversies over the application of this power in the particular circumstances involved. The orders made may ultimately affect private rights (and are invalid if they are arbitrary or unreasonable, beyond the statutory authority of the Commission or constitute an unconstitutional exercise of power); and, therefore, are subject to judicial review. The Legislature has provided statutory methods for speedy and efficient review. The question here is: To whom did the Legislature intend to make this method of review available? Since the public welfare is involved in every Commission case (and is the controlling factor in its decision), to a certain extent every citizen is interested in all its cases. But it is certainly not intended that every citizen may participate in any case. That would prevent the Commission from functioning efficiently.

It seems clearly intended that no direct pecuniary or property rights, or infringement of civil rights of a person, must be involved before he could be a party to a proceeding before the Commission. Section 5686 provides: "complaint may be made by . . . any corporation or person, chamber of commerce, board of trade, or any civic, commercial, mercantile, traffic, agricultural or manufacturing association or organization . . . by petition or complaint in writing, setting forth any act or thing done or omitted to be done by any corporation, person or public utility, · . . . All matters upon which complaint ·may be founded may be joined in one hearing, and no motion shall be entertained against a complaint for misjoinder . . . or nonjoinder of parties; and in any review by the courts of orders or decision of the commission the same rule shall apply with regard to the joinder of' causes (of action) and parties as herein provided. The commission shall not be required to dismiss any complaint because of the absence of direct damage to the complainant."

Section 5687 provides that "any corporation, person or public utility shall have the right to complain on any of the grounds upon which complaints are allowed to be filed by other parties"; and Section 5688 provides that "such corporations and persons as the commission may allow to intervene, shall be entitled to be heard and to introduce evidence." Section 5600 provides that hearings "shall be governed by rules to be adopted and prescribed by the Commission." The Commission has adopted Rule 8 on intervention providing: "In any formal proceeding, the Commission may permit any corporation, association, body politic or person, having an interest in the result

of such proceeding, to intervene and be heard, after opportunity has been given to the party or parties to such proceeding to be heard on such intervention.''

Section 5689 provides that ''after an order or decision has been made by the commission any corporation or person or public utility interested therein shall have the right to apply for a rehearing in respect to any matter determined therein.'' Section 5690 provides for review by the circuit court in the event a rehearing is requested and denied. Under Section 5689, only matters stated in the application for rehearing can be considered on review. Section 5690 also says: ''The commission and each party to the action or proceeding before the commission shall have the right to appear in the review proceedings.'' [For discussion of this provision see State ex rel. Anderson Motor Service Co. v. Public Service Commission, 339 Mo. 469, 97 S. W. (2d) 116.]

Provisions for appeal from the judgment of the circuit court are set out in Section 5693 as follows: ''The commission, any corporation, public utility or person or any complainant may after the entry of judgment in the circuit court in any action in review, prosecute an appeal to a court having appellate jurisdiction in this state. Such appeal shall be prosecuted as appeals from judgment of the circuit court in civil cases except as otherwise provided in this article. . . . The general laws relating to appeals to the Supreme Court and the various courts of appeals in this state shall, so far as applicable and not in conflict with the provision of this chapter, apply to appeals taken under the provisions of this chapter.''

These provisions make it plain that the Public Service Commission Act provides its own code for proceedings for judicial review of its orders and that the reference to the general code is only to make appeals subject to the usual rules of appellate procedure where procedure is not otherwise specified in the Act. This Act itself specifies who shall have the right to be a party to review proceedings both in the circuit and appellate courts. By Section 5689 any party ''interested'' in ''an order or decision'' of the Commission has the right to apply for a rehearing. There is nothing in any other section to indicate that such an ''interested'' party shall not have the right (if his application for rehearing is denied) to exhaust all further remedies provided both to obtain review in the circuit court and to appeal from a circuit court decision against him. The Commission's rule on intervention likewise makes ''interest in the result of such proceeding'' the basis for intervention. Of course, its rule could not enlarge upon the statute, but if its decision that any applicant for intervention is ''interested'' does have any reasonable basis it should be sustained.

Considering the Public Service Commission Act as a whole, it seems apparent that parties to cases before the Commission, whether as

complainants or intervenors are not required to have a pecuniary interest, or property or other rights, which will be directly or immediately affected by the order sought or even its enforcement. The reasonable construction seems to be that the interest necessary to authorize intervention should be the same as that required to become a complainant upon whose complaint a case is commenced. Any local partisan interest in the situation involved, such as a customer, representative of the public in the locality or territory affected [State ex rel. City of St. Louis v. Public Service Comm., 317 Mo. 815, 296 S. W. 790]; or as a competitor for the same territory or privilege is surely sufficient to show an interest similar to that of complainants described in Section 5686 [State ex rel. Kansas City Power & Light Co. v. Public Service Comm., 335 Mo. 1248, 76 S. W. (2d) 343]; and, therefore, is likewise a sufficient basis for intervention. So also it should certainly be sufficient to authorize intervention if the ultimate enforcement of the order sought would directly affect property rights as in American Petroleum Co. v. Public Service Commission, supra, and the ruling to the contrary therein is overruled.

Therefore, when two utilities can reasonably be said to be operating in the same general territory, and the question before the Commission is whether or not one of them should be allowed to take additional locations which either might make arrangements to serve, the other must be held interested in the matter in the sense the term "interested" is used in Section 5689. That was the situation in this case. Both the Cooperative and the Consumers Company had lines approximately seven miles of the property sought to be acquired. Both were operating in the same area, even in the same county, in which this property was located and both (according to the evidence) had negotiated to acquire it and could make arrangements to do so and to operate it. The question of which one should be permitted to acquire it must be decided on the basis of whose operation of the area would best serve the public interest under all the circumstances and not merely upon which could first obtain a contract for purchase. A contract found to be against public interest or the Commission's regulatory policy could not be permitted to stand in this situation any more than a contract for unapproved rates. We hold that Consumers Company was sufficiently "interested" to have the right to intervene and likewise the right to apply for a rehearing, when the Commission decided that a competitor could take over these new locations adjoining the general territory in which both were operating. Our conclusion also is that this company had the further right, because of such interest, to seek a review in the circuit court and appeal to this court from its adverse decision. The motion to dismiss must be overruled as to the Consumers Company.

We think the same thing is true of the Missouri Power & Light Company. It showed that it had large capacity transmission

922

lines extending into the area with adequate sources of power for the whole area, and that it now supplies and would continue to supply the Consumers Company with substantially all the power it uses. (And would supply these new properties.) It further showed that its plans were to take over the Consumers Company (and also the other intervenor) and integrate their systems into its own and thus ██ sought to eventually acquire the Seller's properties herein involved. The motion to dismiss the appeal as to it should also be overruled. However, there is nothing in the record to show that the Missouri Public Service Corporation is interested, in any reasonable construction of that term. It had no nearby lines, did not seek to acquire any of the Seller's properties and did not furnish or propose to furnish any power to the Consumers Company. Apparently the purpose of its intervention was to show its consent to the ultimate three company integration. Certainly this could have been shown by evidence, and it might have supported the other intervenor's contentions by a showing similar to that of an amicus curiae in a case in court, but that does not show an "interest" in the result sufficient to constitute a reasonable basis for intervention. Therefore, as to it, the motion to dismiss the appeal should be sustained and its appeal is dismissed.

██ On the merits appellants' principal contentions are that the Commission was without lawful power to authorize a regulated public utility system, dedicated to serving the public generally, to be transferred to a cooperative membership company, without determination of the effect upon the public interest; that Section 5415 (defining rural area to include a town) is void because it includes matter not clearly expressed in the title of the Rural Electric Cooperative Act in violation of Sec. 28, Art. 6, Mo. Const.; that the cooperative is not authorized to acquire an electric system for furnishing electric service to persons who are receiving central station service, contrary to the terms of the Federal Act; and that if the Commission had reviewed the facts in evidence before it, its conclusion must have been that the transfer was not in the public interest. As to the first proposition appellants say that the Commission refused to determine the question of the public interest involved and in effect held that the Missouri Rural Electric Cooperative Act repealed Section 5651 in so far as such cooperatives were concerned. They also say that the Commission mistakenly conceived that the only interest involved was that of the stockholders of the Seller and the members of the Cooperative. They further say the theory of the Commission was that if such a Cooperative made a contract for the purchase of any utility property in a town under 1500 population, it was required by the Cooperative Act to approve the transfer regardless of the effect of the transfer upon the public interest in the particular situation. They contend

that refusal to pass on this question of public interest made the order unreasonable, arbitrary and unlawful.

This contention is based upon the following language in the Commission's report: "The Commission is of the opinion that the only question involved in this proceeding is whether or not the public interest will be served by the proposed transfer of the Seller's property to the cooperative. The Intervenors contend in their brief that it will not be in the public interest to permit a regulated utility to sell to a cooperative. The Commission has previously passed on this question in the matter of the Application of Van Buren Light, Power & Ice Company for authorization of sale of property to the Black River Electric Cooperative in Case No. 10205, in which we held: . . . 'The Commission is of the opinion and finds that it has no authority to take a position as to what is "in the public interest" *with reference to the question presented in said paragraph* in view of the positive purpose stated in the Rural Electric Cooperative Act.' (Our italics.) (There is considerable argument in the brief as to what question was meant by this reference.) 'Corporations are created by the legislative arm of the government; their powers and purposes are defined by the Legislature. It is presumed that the General Assembly intended to promote the public interest not only in the creation, but in the definition, of corporate purposes and powers. Consequently, the Commission cannot hold, we believe, that it is not in public interest for the Black River Electric Cooperative upon its conversion, and becoming subject to the provisions of the Rural Electric Cooperative Act, to acquire by purchase the properties of the applicant and to thereafter supply electric energy to its members in that area' . . ."

The Commission then made the following ruling on the present case: "The only jurisdiction the Commission can have over the Co-operative business or property, if it converts under the Rural Electric Cooperative Act, is to be found in Section 5389 of the Revised Statutes of Missouri, 1939. Section 5389 relates to the safety of its ▉▉ lines and electric interference with the lines of other utilities. The Commission has no jurisdiction concerning the manner by which a co-operative comes into existence, how it secures or disposes of its properties. However, Section 5651, R. S. Mo. 1939, confers jurisdiction upon this Commission to authorize or reject the sale of public utility properties. Under the showing that has been made by the utility furnishing the service, the Commission is of the opinion that the Seller be permitted to sell its system to the Cooperative and be relieved from the obligation of furnishing service to this community as a public utility. . . . After careful consideration of the evidence and contention of the parties in interest, we are of the opinion that the application should be granted."

924

We think it is clear from a consideration of the whole report of the Commission (its finding of facts, stated at the beginning of this opinion, as well as its final ruling) that it only meant to overrule appellants' contention that it was against the public interest for any cooperative under any circumstances to ever acquire any properties of any existing operating public utility. The Commission so decided on the ground that the Legislature had by Section 5388 authorized such cooperatives to make such purchases. The Commission pointed out that it "had also many times permitted regulated public electric utilities to sell their utility properties to municipalities" likewise unregulated by it. We think it meant if it sustained appellants' contention by holding that no such purchase could ever be in the public interest then it would be making a ruling in conflict with the Rural Electric Cooperative Act. We agree and hold this contention of appellants is one that must be addressed to the General Assembly. Moreover, we think the Commission did consider and decide the question of whether, under the particular circumstances of this case, it would be in the public interest (including the interest of the public in the whole area involved) to approve or deny the proposed transfer, and that it based its approval upon the conclusion that this transfer would be in the public interest. Furthermore, we hold that such a conclusion was reasonable upon the evidence showing the rural character of the Missouri communities involved, their present poor service, the prospect of what better service might be reasonably expected from either applicant for the territory, the financial condition, management, and prospects of both, the sentiment of the people in these communities and their almost unanimous desire to become members of the Cooperative. (Of course the Commission had no authority to approve or disapprove the sale of the Iowa properties.) Our view also disposes of appellants' constitutional contentions (violation of due process and equal protection clauses of the State and Federal Constitutions by making an arbitrary classification in favor of cooperatives) based on the argument that the Commission decided Section 5651 was inapplicable to purchase of electric generating and transmission properties by cooperatives.

Appellants' contention that subsection (a) of Section 5415 is broader than the title of the Rural Electric Cooperation Act cannot be sustained. The title commences thus: "An act authorizing the formation of non-profit cooperative corporations, without capital stock, for the purpose of furnishing electric current for lighting, hearing and power purposes to its members in rural areas; defining terms used therein, enumerating the activities and powers of such corporations;" etc.

Section 5415 (a) is as follows: " 'Rural area' shall be deemed to mean any area of the United States not included within the boundaries of any city, town or village having a population in excess of fifteen

hundred inhabitants, and such term shall be deemed to include both the farm and nonfarm population thereof.''

Appellants say: ''There is no provision in the title of this act which would indicate that rural areas were to include towns and villages, urban areas, not in excess of fifteen hundred inhabitants, no provision in the title that cooperatives were authorized to furnish electricity in towns and villages of less than fifteen hundred inhabitants.'' There are, however, statements that cooperatives are authorized for furnishing electric current in rural areas; that terms used are defined; and that activities and powers of such cooperatives are enumerated. The term ''rural area'' has no such definite and certain legal meaning as to be clear without definition, and the definition made is not unreasonable. [See People ex rel. Oak Hill Cemetery Ass'n v. Pratt, 60 Hun, 582, 14 N. Y. S. 804.] Furthermore, the same definition had already been set out in the Federal Act. (Title 7 U. S. C. A. 913). We hold that this title is sufficient for compliance with the constitutional requirement.

Appellants' further contention (that a cooperative cannot take over facilities for furnishing electric service to persons already receiving central station service) is based on its argument that ''the purpose of Federal Act (Secs. 902-904, Title 7, U. S. C. A.) was to loan money to Rural Electric Cooperative corporations organized for the purpose of supplying electricity to persons in rural areas not receiving central station service.'' Appellants say that our State Act and the Federal Act are *in pari materia* and must be construed together. They say that the State Act must be construed as limited by the Federal Act and this requires the ruling that ''the cooperative is not empowered to purchase an electric system to furnish electricity to persons in rural areas who are already receiving central station service.'' However, the Cooperative was buying a complete system, and taking over its existing customers as members, and was not entering into competition with an existing utility to take from it customers who could continue to be served by it in an area served by both. Of course, whether the United States Goverment should make loans for this purpose under the Federal Act was not a matter for the Commission to decide. [For a construction of the Federal Act prior to the passage of the Missouri Rural Electric Cooperative Act see Missouri Power & Light Co. v. Lewis County Rural Electric Co-op. Assn., 235 Mo. App. 1056, 149 S. W. (2d) 881.] The Missouri Act refers to no other law and is complete in itself. Certainly our Legislature could authorize a cooperative to make such a purchase as this whether it could borrow the money from the United States Government or not. Of course, if sufficient consumers of the area would not become members of the cooperative (so that it could legally serve all prospective consumers at least within the 10% limit above its membership) the the Commission could not properly authorize a transfer, but the con-

926

trary was true here. We must hold that the provisions of Section 5388 (when construed with Section 5415) are broad enough to authorize this purchase, and we find no restrictions elsewhere in the Act (as was true in the Indiana Act cited by appellants) which in any way limits this authority so that it would have to be construed as appellants contend.

The judgment is affirmed. All concur.