**STATE ex rel. INTERCON GAS, INC., Appellant,**

v.

**PUBLIC SERVICE COMMISSION OF MISSOURI, et al., Respondents.**

**No. WD 46368.**

Missouri Court of Appeals, Western District.

March 2, 1993.

---

Paul Anthony Boudreau, Jefferson City, for appellant.

William Shansey, Jefferson City, for Public Service Com'n.

John R. Bakewell, Jefferson City, for Office of Public Counsel, intervenor.

Richard W. French, St. Louis, for Laclede Gas Co., intervenor.

James F. Mauze, Clayton, for Missouri Pipeline Co./Missouri Gas Co., intervenor.

Before SMART, P.J., and SHANGLER and FENNER, JJ.

FENNER, Judge.

Appellant, Intercon Gas, Inc. (Intercon), appeals from an order of the circuit court affirming a decision by the Public Service Commission of Missouri (PSC or Commission). The matter before the PSC involved applications from respondents, Missouri Gas Company (MoGas), Missouri Pipeline Company (MPC), and Laclede Gas (Laclede), and appellant Intercon for certificates of public convenience and necessity in regard to various "gas plant" operations.[1]

MoGas first filed an application in April of 1990 to construct, own, operate and maintain an intrastate natural gas pipeline from a point of interconnection with the Panhandle Eastern Pipeline Company's (PEPL) intrastate pipeline near Jefferson City, Missouri to Fort Leonard Wood and to subsequently extend this pipeline east/northeast along I-44 to Sullivan, Missouri then north to the Washington–Union, Missouri area. In July of 1990, MoGas filed an Amended Application to construct, own, operate and maintain an intrastate natural gas pipeline along the same service route, but specifically requesting authority to allow MoGas to commence construction of the I-44 corridor portion of the pipeline prior to the construction of the Jefferson City–Fort Leonard Wood portion.

In August of 1990, MPC filed an application to construct, own, operate and maintain an extension of its then existing intrastate natural gas pipeline. The extension was sought from St. Charles County, Missouri south through Franklin County to Sullivan, Missouri, terminating at a point of interconnection with the intrastate natural gas pipeline proposed by MoGas near Sullivan, Missouri.

In October of 1990, MoGas filed its Second Amended and Final Application requesting a Certificate to construct, own, operate and maintain an intrastate natural gas pipeline commencing from a point of interconnection with the proposed extension of MPC's intrastate natural gas pipeline near Sullivan, Missouri and travelling southwest along the I-44 corridor to Fort Leonard Wood.

Laclede sought to have the Commission grant it a Certificate of Convenience and Necessity to operate a local gas distribution company in Franklin County, Missouri to serve the communities of Washington, Union and St. Clair which communities had already granted franchises to Laclede. In addition, Laclede also sought authority to construct a 16 inch natural gas pipeline commencing at a point of interconnection with the proposed MPC extension of its natural gas pipeline near Washington, Missouri and travelling in an eastward direction to a point near Ellisville, Missouri. From this line, Laclede also proposed to construct a 6⅝ inch lateral pipeline to serve the City of Pacific.

Intercon first filed an application in April of 1990 seeking to construct, own, operate and maintain an intrastate natural gas pipeline to serve the communities along I-44 from Sullivan to Rolla, Missouri. In May of 1990, Intercon amended its application to extend its project further into Franklin County by seeking to serve the communities of Washington, Union and St. Clair. In December of 1990, Intercon filed its second amended application to extend its proposed pipeline along I-44 past Rolla to Fort Leonard Wood and also proposed the construction of a spur to serve the City of Pacific, in Franklin County, Missouri.

All of the pending applications were consolidated for hearing which was ultimately held in March of 1991. After the hearing

1. The term "gas plant" is defined in section 386.020(9), RSMo 1986, as all real estate, fixtures and personal property used for the distribution, sale or furnishing of gas. It is additionally noted here that all statutory references are to RSMo 1986 unless otherwise specifically stated.

was concluded, Intercon filed its Initial Brief with the PSC. In its Initial Brief, Intercon conceded that the public interest would best be served by approving the applications of MPC and Laclede with the exception that Intercon sought authority to serve Sullivan. Intercon's Initial Brief contained a new proposal which Intercon referred to as the "Modified Intercon Proposal." In its Modified Proposal, Intercon sought to have the Commission consider the effect upon its withdrawal of its proposed extension north from the City of Sullivan, which was the area affected by the MPC and Laclede proposals. Intercon continued to urge the denial of the MoGas application.

Intercon attempted to file additional exhibits in support of its Modified Proposal. The PSC held that the record was closed and denied Intercon's request to file additional exhibits.

On June 28, 1991, the Commission entered its order awarding certificates of public convenience and necessity to MoGas, MPC and Laclede and denying the application of Intercon. Intercon appeals.[2]

### Mootness

Before addressing the merits of Intercon's appeal, we first address the Motion of MoGas to dismiss Intercon's appeal as moot. The record reflects that the MoGas pipeline from Sullivan to Fort Leonard Wood has been completed during the pendency of this appeal. MoGas argues that this renders Intercon's appeal of the Commission's decision granting MoGas's certificate in regard to said pipeline moot.

■ A case on appeal becomes moot when circumstances change so as to alter the position of the parties or subject matter so that the controversy ceases and a decision can grant no relief. *State ex rel. Monsanto Co. v. Public Serv. Comm'n,* 716 S.W.2d 791, 793 (Mo. banc 1986). PSC ratemaking orders have been found to be moot on appeal when subsequent orders granting additional rate increases have

been entered during the pendency of the appeal superseding the orders in question. *See, State ex rel. Empire Dist. Elec. Co. v. Public Serv. Comm'n,* 615 S.W.2d 598 (Mo. App.1981); *State ex rel. Kansas City Power & Light Co. v. Public Serv. Comm'n,* 615 S.W.2d 596 (Mo.App.1981); *State ex rel. Missouri Pub. Serv. Co. v. Fraas,* 615 S.W.2d 587 (Mo.App.), *cert. denied,* 454 U.S. 1032, 102 S.Ct. 569, 70 L.Ed.2d 476 (1981); *State ex rel. St. Louis County Sewer Co. v. Public Serv. Comm'n,* 545 S.W.2d 375 (Mo.App.1976); *State ex rel. Gas Serv. Co. v. Public Serv. Comm'n,* 536 S.W.2d 491 (Mo.App.1976).

■ Underlying the application of the doctrine of mootness in ratemaking orders is the prohibition of retroactive ratemaking which renders the court without the ability to afford relief in regard to a superseded order. *State v. Public Serv. Comm'n,* 615 S.W.2d at 599. However, the fact that an act authorized by the PSC has been completed pending appeal does not of itself render an appeal moot. In *State ex rel. Consumers Public Service Co. v. Public Service Commission,* 352 Mo. 905, 180 S.W.2d 40 (Mo. banc 1944), the Missouri Supreme Court held that an appeal of a decision of the Commission approving the sale and purchase of electric utility properties was not mooted by the fact that the sale had been "consummated" and the properties were being operated by the purchaser. The Court found that the order, if invalid, could be set aside. *Id.* at 44.

As reflected in *State ex rel. Consumers Public Service Co.,* if the PSC order authorizing the certificate to MoGas is determined to be invalid, it can be ordered to be set aside and the cause remanded to the PSC. If upon remand MoGas was not successful in obtaining authority to operate its pipeline, the PSC would have authority to seek to enjoin its operation. *Public Serv. Comm'n v. Kansas City Power & Light Co.,* 325 Mo. 1217, 31 S.W.2d 67 (Mo. banc 1930). However, this is not to say that the

---

**2.** For illustrative purposes, a map, taken from the Commission's order, is affixed as appendix A.

completion of the project, under authority of the PSC that is later set aside on appeal, cannot be taken into consideration in determining the public interest in the event of remand. Orders of the PSC are made on the basis of the public interest. *State ex rel. Consumers Pub. Serv. Co.*, 180 S.W.2d at 44. The PSC would be entitled to consider any relevant circumstance.

Intercon's appeal is not rendered moot by MoGas having completed its pipeline pending appeal.

## Standard of Review

■ Appellate review of adjudicated proceedings before the Public Service Commission is limited to a determination of lawfulness and reasonableness of the Commission's actions; lawfulness is determined from the statutory authority of the Commission to act while reasonableness depends on whether the decision is supported by competent and substantial evidence. Mo.Const. art. V, § 18; *State ex rel. Beaufort Transfer Co. v. Clark*, 504 S.W.2d 216, 217 (Mo.App.1973). Moreover, on appellate review a Commission order enjoys a presumption of validity as to matters of reasonableness and the court may not substitute its judgment for that of the Commission if the Commission order is supported by substantial and competent evidence on the record as a whole. *State ex rel. Ashcroft v. Public Serv. Comm'n*, 674 S.W.2d 660, 662 (Mo.App.1984) (citing *State ex rel. Utility Consumers Council v. Public Serv. Comm'n*, 585 S.W.2d 41, 47 (Mo. banc 1979)). In fact, findings of the Commission are prima facie correct and one challenging a Commission order carries the burden of making a convincing showing that those findings are not reasonable and lawful. *State ex rel. Inman Freight System, Inc. v. Public Serv. Comm'n*, 600 S.W.2d 650, 654 (Mo.App.1980); *see also* § 386.430.

## Intercon Appeal

Intercon argues on appeal that the Commission's order denying its application for certificate of convenience and necessity and granting MoGas' application is unlawful and unreasonable because of the following: (1) Intercon met the statutory criteria for issuance of a certificate, (2) the Intercon transportation rate is more favorable than the MPC–MoGas rate, (3) the long term gas supply available to Intercon is more reliable than the supply available to MoGas, (4) Intercon is more financially sound than MoGas, (5) the Intercon management is more capable than the MoGas management, (6) the Intercon pipeline would be capable of serving the gas requirements of the I–44 corridor gas consumers while the MoGas pipeline would not, (7) the MoGas pipeline is not necessary or convenient for the public service, (8) the MPC and MoGas combined transportation rates are unlawfully discriminatory, (9) the Commission erred by failing to receive late filed exhibits in support of Intercon's Modified Proposal, (10) the Commission exhibited bias against Intercon in the Commission's order, and (11) the Commission's order fails to inquire into rates and transactions among members of the Edisto family.

■ The PSC has authority to grant certificates of convenience and necessity when it is determined after due hearing that construction is "necessary or convenient for the public service." § 393.170.3. The term "necessity" does not mean "essential" or "absolutely indispensable", but that an additional service would be an improvement justifying its cost. *State ex rel. Beaufort Transfer Co. v. Clark*, 504 S.W.2d at 219. Additionally, what is necessary and convenient encompasses regulation of monopoly for destructive competition, prevention of undesirable competition, and prevention of duplication of service. *State ex rel. Public Water Supply Dist. No. 8 v. Public Serv. Comm'n*, 600 S.W.2d 147, 154 (Mo.App.1980). The safety and adequacy of facilities are proper criteria in evaluating necessity and convenience as are the relative experience and reliability of competing suppliers. *State ex rel. Ozark Elec. Coop. v. Public Serv. Comm'n*, 527 S.W.2d 390, 394 (Mo.App.1975). Furthermore, it is within the discretion of the Public Service Commission to determine when the evidence indicates the public interest

would be served in the award of the certificate. *Id.* at 392.

### (1)

Intercon's argument that it met the statutory criteria for issuance of a certificate of convenience and necessity begs the question on review and is refuted by the record. The question on review is whether the Commission's order is supported by competent and substantial evidence, not whether the Commission could have made a different decision. *State ex rel. Beaufort Transfer Co. v. Clark,* 504 S.W.2d at 217. The ensuing discussion of the specific points raised by Intercon shows that the Commission's order was supported by competent and substantial evidence.

### (2)

■ Intercon argues next that its transportation rate was more favorable than the MoGas and MPC rate.

Intercon argues that the evidence showed its transportation rate to be $1.06. Intercon argues that said rate is supported by its modified proposal. However, the exhibits adjusting Intercon's rate in light of its Modified Proposal were rejected for consideration as being presented to the Commission after the close of the evidence. The evidence before the Commission does not support Intercon's claimed transportation rate of $1.06. The evidence considered and determined by the Commission reflects that Intercon's realistic transportation rate was higher than that of MoGas.[3]

### (3)

■ Intercon argues next that the long term gas supply available to Intercon is more reliable than the supply available to MoGas.

The record reflects that MoGas would be transporting gas from PEPL and that Intercon would be transporting gas from the Mississippi River Transportation Corporation (MRT). There was already an agreement in place for PEPL to provide gas that would flow into the MoGas transportation line. Intercon had no such agreement with MRT. The evidence also reflected that PEPL is directly connected to plentiful gas supplies while MRT relies upon other pipeline companies for the major portions of its gas supply.

The record does not support Intercon's contention of having a more reliable long term gas supply available.

### (4)

Intercon argues next that it is more financially sound than MoGas.

■ In regard to financial ability it is significant that MoGas' parent corporation, Omega Pipeline Company (Omega), has contracted with Fort Leonard Wood to provide natural gas to Fort Leonard Wood over the next ten years. Omega will transport gas to Fort Leonard Wood through MoGas which will provide Mogas with revenue from transportation cost for the term of the contract. This circumstance lends financial strength to MoGas that is not enjoyed by Intercon.

Additionally, MoGas has shown a binding financial commitment from Omega and Omega's parent corporation ESCO Energy, Inc. (ESCO) to fund its project. Furthermore, a financial commitment to fund the project had also been made by Edisto Resources, Inc. (Edisto) which is ESCO's parent corporation. Intercon challenges the financial ability of Edisto, however, there was evidence to show that the figures relied upon by Intercon in this regard were skewed by one-time occurrences and events.

Intercon failed to show that MoGas is financially unsound.

### (5)

Intercon argues next that its management is more sound than that of MoGas.

The record reflects that the president of MoGas has approximately 20 years of pipe-

---

3. The Commission found Intercon's projected land acquisition costs and projected gas usage to be unrealistic.

line operations and construction experience. The vice-president of MoGas has nearly 10 years of experience in engineering positions constructing pipelines. Both of said officers also have experience and involvement in the construction of an existing and operating intrastate pipeline in Missouri.

The record further reflects MoGas's commitment to operate the pipeline in question in accordance with all applicable state and federal safety regulations and that the existing Missouri intrastate pipeline, with which the officers of MoGas have had experience, has not experienced any safety related incidents. On the other hand, the record reflects reason to question Intercon's credibility in the matters before the Commission.

The record does not show MoGas's management to be unsound or otherwise support Intercon's argument of superior management.

#### (6)

Intercon argues next that its pipeline would be capable of serving the I-44 corridor gas customers while the MoGas project would not.

Intercon argues specifically in support of its position here that MoGas (i) failed to employ outside consultants to check pipeline design, (ii) failed to perform a gas market feasibility study with respect to it serving the cities along the I-44 Corridor, (iii) imprudently routed its pipeline through the Mark Twain National Forest, which will likely require significant delay because of the need for an environmental impact study, and (iv) failed to prepare a flow analysis to determine the pressures of gas into the MGC system at Sullivan, resulting in MGC likely having inadequate flow capacity other than to satisfy the Fort Leonard Wood contract.

Once again, all of Intercon's allegations are refuted by the record. The record reflects that MoGas' pipeline design was checked by Laclede, furthermore, Intercon cites no authority to show that a failure to employ an outside consultant on pipeline design is essential. The record further reflects that MoGas had performed an analysis and held discussions with the governing bodies of the communities on the I-44 corridor, that the routing through Mark Twain National Forest did not present a major obstacle, and that flow capacity was sufficient to serve the I-44 corridor in addition to Fort Leonard Wood.

#### (7)

Intercon argues next that the MoGas pipeline is not necessary or convenient for the public service. The only point that Intercon raises here that is not addressed elsewhere in this opinion is its argument that the rate for natural gas would be more than the cost of propane and of electricity pursuant to the MoGas proposal.

In making this argument Intercon ignores direct testimony that the consumer natural gas rate would be cost competitive with other sources of energy and further ignores the fact that Fort Leonard Wood has already contracted to convert to natural gas along with interest having been expressed by other communities.

Intercon's argument in regard to cost competitiveness is not convincing.

#### (8)

■ Intercon argues next that the MPC and MoGas transportation rates are unlawfully discriminatory and preferential because the rates vary while the services are provided under substantially the same circumstances.

In response to this argument MoGas and MPC argue that Intercon lacks standing to contest the Commission's decision in regard to their rates because Intercon has no legally cognizable interest in the rates charged by MoGas or MPC.

Section 386.540 provides for an appeal from a decision of the circuit court upon review of a decision of the PSC as follows:

The Commission and any party, including the public counsel, who has participated in the commission proceeding which produced the order or decision may, after the entry of judgment in the circuit court in any action in review, prosecute an

appeal to a court having appellate jurisdiction in this state.

A party appealing a Commission order "need not have a direct pecuniary or property right involved but only such interest as would require that he be heard before the administrative body (here the Commission)." *State ex rel. Missouri Power & Light Co. v. Riley,* 546 S.W.2d 792, 797–98 (Mo.App.1977) (citing *State ex rel. Consumers Pub. Serv. Co. v. Public Serv. Comm'n,* 352 Mo. 905, 180 S.W.2d 40, 45 (Mo. banc 1944); *State ex rel. Crown Coach Co. v. Public Serv. Comm'n,* 239 Mo.App. 198, 185 S.W.2d 347, 356 (Mo.App. 1944)).

Intercon had a right to be heard before the Commission on the question of rates and, therefore, as a general rule would have a right to challenge on appeal a rate structure that it believed to be unlawful. However, in the case at bar, in Intercon's Initial brief before the Commission, it stated, in pertinent part, as follows:

> Intercon believes, and recommends to the Commission, that the public interest for all gas consumers and ratepayers in Missouri affected by these proceedings would best be served if the Commission would decide (1) to grant the certificate authority requested by MPC ... to extend its existing pipeline system from an interconnection with MPC's existing pipeline in St. Charles County to a point of interconnection with the proposed pipeline of LGC, but to deny MPC the authority to extend its system to the City of Sullivan....

Essential to Intercon's charge of discrimination is the Commission's approval of the MPC rate. However, Intercon conceded before the Commission that the granting of a certificate to MPC was in the public interest of all gas consumers and ratepayers in Missouri. Therefore, Intercon cannot now charge on appeal that the Commission unlawfully discriminated by approving MPC's proposed rate structure.[4]

4. MPC and MoGas argue that since they are separate corporate entities and, additionally, since like or similar services are not being offered under substantially similar circumstances or conditions to similarly situated parties, that

(9)

Next, Intercon argues that the Commission erred by failing to receive late filed exhibits in support of its Modified Proposal in which proposal Intercon sought to have the Commission consider the effect upon its application of Intercon's withdrawal of its proposed extension north from the City of Sullivan.

■ The decision on whether or not to reopen a case to permit additional evidence is a matter within the trial court's discretion and will not be interfered with absent a clear showing of abuse of discretion. *Carrel v. Carrel,* 791 S.W.2d 831, 835 (Mo. App.1990).

The record reflects that this was a lengthy and hotly contested proceeding before the Commission which required review preparation, and presentation of a great deal of technical information on a variety of matters. Intercon makes no showing of why it could not or did not submit evidence in support of its Modified Proposal during the Commission hearing in order to allow for cross examination and the presentation of evidence in opposition.

Intercon has not shown an abuse of discretion by the Commission in refusing to reopen the record.

(10)

Intercon argues next that the Commission exhibited bias against it in the Commission's order. Under this point, Intercon's argument boils down to Intercon arguing that if the Commission would have been fair it would have accepted Intercon's evidence and not ruled against it. This argument is of no avail in that the Commission's order is supported by substantial and competent evidence.

(11)

Intercon's final argument is that the Commission's order is unlawful, not supported by the record, and arbitrary and

their rates are not discriminatory. Given Intercon's position before the Commission on MPC's application it is not necessary for us to reach these arguments.

capricious because it fails to inquire into rates and transactions among members of the Edisto family. The members of the Edisto family are Edisto, a gas exploration and production company and parent corporation to ESCO, a gas producer and supplier; ESCO's subsidiary, Omega; and Omega's subsidiaries, MoGas and MPC.

Intercon's argument here seems to be that since the Commission does not regulate the rates of Edisto or ESCO, these two companies will be in a position to supply gas to MoGas without regulation. Intercon argues that this would not be in the public interest.

The record reflects that any customer of MoGas along the I–44 corridor will be free to contract for natural gas to be transported along the MoGas pipeline from any available source with access to PEPL, thus enabling a customer to contract with the most competitive supplier. Furthermore, Edisto and ESCO are not likely suppliers because they are not able to market their gas through the Panhandle Eastern system at a competitive price.

The record refutes Intercon's contention of invalidity of the Commission's order for failure to inquire into rates and transactions among members of the Edisto family.

Judgment affirmed.

All concur.

## APPENDIX

Fort Leonard Wood[5]

---

[5] The Fort Leonard Wood designation was not included on the map from the Commission's Order.