STATE of Missouri, ex rel. PUBLIC COUNSEL, Appellant,

v.

PUBLIC SERVICE COMMISSION OF THE STATE OF MISSOURI, Respondent.

No. WD 71660.

Missouri Court of Appeals, Western District.

Oct. 26, 2010.

As Modified Dec. 21, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 21, 2010.

Application for Transfer Denied Jan. 25, 2011.

Christina L. Baker, Esq., and Lewis R. Mills, Jr., Esq., Jefferson City, MO, for appellant.

Steven C. Reed, Esq., Jefferson City, MO, for respondent.

Before Division One: KAREN KING MITCHELL, Presiding Judge, LISA WHITE HARDWICK, Chief Judge, and CYNTHIA MARTIN, Judge.

LISA WHITE HARDWICK, Chief Judge.

Public Counsel appeals an order by the Missouri Public Service Commission approving the transfer of sewer utility assets and an interim tariff increase for Stoddard County Sewer Company, Inc. For reasons explained herein, we dismiss the appeal as moot.

## FACTUAL AND PROCEDURAL HISTORY

In 1979, the Missouri Public Service Commission granted a certificate of convenience and necessity to Stoddard County Sewer Company, Inc. ("SCSC") to provide sewer service for approximately 170 households located outside of Dexter, Missouri. Carl Bien, Sr., owned all SCSC's stock and operated and managed the sewage treatment plant. In 1999, the Secretary of State administratively dissolved SCSC for failure to file a required annual registration report. Bien continued to operate the plant, although SCSC was legally authorized only to carry on business necessary to wind up and liquidate its affairs.

When Bien died in 2001, the Stoddard County Public Administrator temporarily managed and operated the plant. Bien's estate was administered, and in June of 2002, all of the SCSC stock was awarded to Carl's wife, Ruth Bien. Ruth didn't desire to manage or operate the plant, but no other sewage treatment utility was able to provide sewer service to the customers of SCSC.

Staff of the Missouri Public Service Commission ("Staff")[1] conducted an audit of SCSC and discovered the plant was in extreme disrepair and running a large revenue deficit. Staff, working with the Stoddard County Public Administrator, prepared to recommend an increase in the plant's tariffs of approximately 105% but was unable to obtain the increase due to SCSC's corporate dissolution. Staff sought an investor but did not locate anyone willing to provide sufficient funds to

1. Staff of the Missouri Public Service Commission is defined as "all personnel employed by the commission whether on a permanent or contractual basis who are not attorneys in the general counsel's office, who are not members of the commission's research department, or who are not law judges." Mo. CODE REGS. ANN. tit. 4, § 240–2.010(5) (2010).

upgrade the plant to meet current demands.

Staff contacted Rodger Owens, who operated water utilities in the area, for assistance in keeping the plant operational. Owens formed RD Sewer Co., LLC ("RD Sewer") for the purpose of operating the plant, and Ruth Bien assigned all of the SCSC stock to RD Sewer. Owens began running the plant in January of 2002. Owens has never drawn a salary from the plant and pays the plant's vendors only when there is sufficient cash in its account. He has rarely been able to reimburse himself for gasoline and other personal expenditures necessary to keep the plant operational. Shortly after taking over operation, Owens obtained a necessary motor for the plant, and the $17,000 bill remains outstanding.

On March 4, 2008, SCSC, RD Sewer, and Staff filed a joint application with the Missouri Public Service Commission ("Commission") seeking authorization to transfer SCSC's assets to RD Sewer and the approval of an interim rate increase. In the application, Staff asserted that it was in the public interest to assist RD Sewer with the application to ensure continuation of adequate service to households served by SCSC.

On April 8, 2008, the Commission gave notice that it would retain outside experts to provide an objective analysis of SCSC's assets because Staff had joined the application as a party. The Commission issued an order appointing a Special Master to solicit bids from third-party experts to provide an analysis of SCSC's financial condition and the physical condition of the plant. On June 4, 2008, the Commission announced that The Bonadio Group would perform the financial analysis, and S.H. Smith & Co., Inc. would conduct the physical analysis of the plant.

On July 9, 2008, The Bonadio Group and S.H. Smith & Co., Inc. provided their reports to the Commission. On August 6, 2008, Public Counsel [2] filed a motion *in limine*, arguing the expert reports and associated testimony were prejudicial, irrelevant, and lacked probative value because The Bonadio Group and S.H. Smith & Co., Inc. were improper witnesses of the Commission, itself, and not witnesses called by the parties. The Commission denied the motion *in limine*.

During a hearing on August 13, 2008, the Commission heard testimony from Rodger Williams of S.H. Smith & Co., Inc., Randall Shepard of The Bonadio Group, Steven Rackers of Staff, James Merciel, Jr. of Staff, and Ted Robertson of Public Counsel. Public Counsel objected to the testimony and reports provided by Williams and Shepard. The Commission denied the objection, and the expert reports were admitted into evidence.

Rodger Williams of S.H. Smith & Co., Inc. testified that, based on his physical examination, the plant had exceeded its original design capacity and was in violation of various environmental laws. Williams recommended an upgrade of the plant's infrastructure at an estimated cost of approximately $297,500.

Randall Shepard of The Bonadio Group testified that he interviewed Owens and examined the invoices and expenditure receipts of SCSC. Shepard determined that SCSC had, in 2007, generated $24,119 in

2. Public Counsel is appointed by the Director of the Department of Economic Development to "represent and protect the interests of the public" before the Public Service Commission. §§ 386.700, 386.710.1(2). Public Counsel is served with all proposed tariffs, pleadings, applications, and orders in all proceedings before the Public Service Commission. § 386.710.2.

revenue but incurred expenses of $29,453. Although Owens had proposed to The Bonadio Group that the plant would require $82,289 in revenue, Shepard recommended a revenue requirement of $58,667.

Steven Rackers and James Merciel, Jr., of Staff presented data gathered by Staff during the 2002 audit of SCSC and recommended a revenue requirement of $48,074.

Ted Robertson of Public Counsel compared the data presented by S.H. Smith & Co., Inc., The Bonadio Group, and Staff, and recommended a revenue requirement of $29,720.

On October 23, 2008, the Commission approved the asset transfer from SCSC to RD Sewer, determined the plant's revenue requirement was $44,830, and ordered RD Sewer to file necessary tariff sheets in order to establish an interim tariff in accordance with this revenue requirement. The Commission also required that RD Sewer file a formal small sewer company tariff increase request within thirty days.

As instructed by the Commission, RD Sewer subsequently filed tariff sheets to request an interim rate increase of approximately 100%, corresponding to a revenue requirement of $44,830. Staff reviewed the tariff sheets for the interim rate increase and determined the sheets were in compliance with the Commission's order. On December 11, 2008, The Commission approved the tariff increase, effective December 21, 2009.

The Commission closed the case on December 23, 2008. Public Counsel filed a petition for writ of review in the Circuit Court of Cole County. On September 16, 2009, the circuit court affirmed the Commission's final order.

Meanwhile, as ordered by the Commission, RD Sewer initiated a small company tariff increase request ("permanent rate increase") in order to make the interim tariff increase permanent. During this proceeding, RD Sewer, Staff, and Public Counsel, agreed that RD Sewer's permanent revenue requirement should be increased by an additional $6,350 over the amount previously approved by the Commission during the proceedings involving the interim rate increase. On August 31, 2009, the Commission approved RD Sewer's request for a permanent rate increase, effective September 12, 2009.

## STANDARD OF REVIEW

■■■■ On appeal, we review the decision of the Public Service Commission, not the judgment of the circuit court. *State ex rel. Associated Natural Gas Co. v. Pub. Serv. Comm'n,* 954 S.W.2d 520, 528 (Mo. App.1997). In reviewing a decision of the Commission we determine whether the order is lawful and reasonable. *Id.;* § 386.430.[3] "In determining whether the [Commission's] decision was lawful, this court exercises unrestricted, independent judgment and must correct erroneous interpretations of the law." *Associated Natural Gas Co.,* 954 S.W.2d at 528. "As to matters of reasonableness, this court determines whether the [Commission's] decision was supported by substantial and competent evidence on the whole record, whether the decision was arbitrary, capricious, or unreasonable, or whether the [Commission] abused its discretion." *Id.*

## ANALYSIS

On appeal, Public Counsel contends the Commission erred during the interim rate increase proceedings and violated due process considerations by: (1) seeking third-party expert opinions from The Bonadio Group, and S.H. Smith & Co.; and (2) admitting into evidence the reports and

---

**3.** All statutory references are to RSMo 2000, as updated through RSMo Cum.Supp.2009.

associated testimony from The Bonadio Group and S.H. Smith & Co., Inc.

Before we reach these issues, "[a] threshold question in any appellate review of a controversy is the mootness of the controversy." *Armstrong v. Elmore*, 990 S.W.2d 62, 64 (Mo.App.1999). The question of mootness arises in this case because the Public Counsel has appealed an interim rate increase determination that was superseded by the Commission's subsequent approval of a permanent rate increase.

A case becomes moot when the matter presented for review seeks a decision "upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy" or "when circumstances change so as to alter the position of the parties or subject matter so that the controversy ceases and a decision can grant no relief." *Precision Invs., L.L.C. v. Cornerstone Propane, L.P.*, 220 S.W.3d 301, 304 (Mo. banc 2007); *State ex rel. Intercon Gas, Inc. v. Pub. Serv. Comm'n*, 848 S.W.2d 593, 596 (Mo.App.1993). In determining if a controversy is moot, a reviewing court may consider facts outside the record on appeal. *State ex rel. Mo. Gas Energy v. Pub. Serv. Comm'n*, 224 S.W.3d 20, 25 (Mo.App.2007). "It is well-settled that Missouri courts do not determine moot cases." *In re Estate of Washington*, 277 S.W.3d 777, 780 (Mo.App.2009). "Because mootness implicates the justiciability of a case, an appellate court may dismiss a case for mootness *sua sponte*." *Armstrong*, 990 S.W.2d at 64.

As related to this case, "[w]hen tariffs are superseded by subsequent tariffs that are filed and approved, the 'superseded tariffs are generally considered moot and therefore not subject to consideration.'" *State ex rel. City of Joplin v. Pub. Serv. Comm'n*, 186 S.W.3d 290, 295

(Mo.App.2005) (*quoting State ex rel. Mo. Pub. Serv. Comm'n v. Fraas*, 627 S.W.2d 882, 885 (Mo.App.1981)). "Underlying the application of the doctrine of mootness in ratemaking orders is the prohibition of retroactive ratemaking which renders the court without the ability to afford relief in regard to a superseded order." *Intercon Gas, Inc.*, 848 S.W.2d at 596. We cannot provide relief in the case of superseded rates because amounts collected under established rates "become[ ] the property of the utility, of which it cannot be deprived by either legislative or court action without violating the due process provisions of the state and federal constitutions." *Lightfoot v. City of Springfield*, 361 Mo. 659, 236 S.W.2d 348, 354 (1951). Rates established by the Commission remain in force and are prima facie lawful and reasonable until found otherwise by a reviewing court. § 386.270.

In this case, the Commission's order approving RD Sewer's interim rate request, effective December 21, 2008, was superseded by the Commission's approval of RD Sewer's permanent rate increase request, effective September 12, 2009. There is neither a currently-in-effect utility tariff nor any impounded funds that would be affected by a decision in this matter. Despite the due process concerns raised by Public Counsel, no relief could be afforded by addressing the points on appeal. Thus, the appeal is moot because an opinion in this case would have no practical effect on the parties involved.

Public Counsel asks us to consider this case despite its mootness. An exception to the general rule that appeals of superseded tariffs are moot provides that we may exercise discretionary review where " 'an issue is presented of a recurring nature, is of general public interest and importance, and will evade appellate review.'" *City of Joplin*, 186 S.W.3d at 295 (*quoting Fraas*, 627 S.W.2d at 885).

Due to the unique circumstances of the underlying case, this appeal involves an issue that is not of general public interest. The Commission was faced with approximately 170 households that would lose all sewer service if SCSC did not remain operational. When no one was willing to upgrade or invest in the plant, Staff took action to ensure the customers of SCSC would continue to receive sewer service, which entailed assisting those willing to operate the plant with the transfer of assets and establishment of a necessary rate increase.

The application for an interim rate increase indicates that it was jointly filed by SCSC, RD Sewer, and Staff due to the "unusual state of [SCSC's] affairs." The application further acknowledges that the joint request involves a "highly unusual, if not unique" situation that "demands a creative solution." Because Staff, who are actually employed by the Commission, joined in the application, the Commission felt it was necessary to seek expert opinion from third parties in order to avoid the appearance of bias or impropriety.

Public Counsel asserts this appeal presents "a reoccurring unsettled issue of public interest and importance" but does not provide any evidence or argument indicating a similar factual scenario has ever previously occurred or is likely to occur in the future. Because we find that the issue presented is not a matter of general public interest and is unlikely to reoccur, we decline to exercise discretionary review.

### CONCLUSION

The appeal is dismissed as moot.

All Concur.